Mr. Agostino, May it please the Court, my name is Frank Agostino. It's my privilege to represent Joan and John Privilege Finnegan. It's also my privilege to have worked with the Department of Justice Tax Division in this case. As you can see, we've both cited many of the same cases, the same rules of statutory construction, and we're focusing on a very important issue in tax controversy. This is an appeal from the United States Tax Court. The issue before the tax court... Which is a trial court. Which is a trial court. That's a really important point to me here. Your argument is that Allen is wrong. Yes, Your Honor. You conceded that this case was being tried under Allen without objection over and over and over. I read the entire record, including your pretrial submission. Nothing put that court on notice that you wanted Allen revisited. Except... You filed a post-trial pleading, and the government, the commissioner's response said, here we go again. Never, Allen was never raised. I've never seen a case of invited error as great as this one, I have to tell you. So, we start with, this is the tax court, they had stipulated the issues in the case, so there is a stipulation of fact. The stipulation of fact is that the statute of limitations, the issue that the parties stipulated to in the joint stipulation of fact... Allen was mentioned over and over again in dialogue with the judge. Yes. Okay. Yes, the... We admit to the Allen case, for example. That's the law, unfortunately, yes. You contest that law, no, Your Honor. I mean, over and over and over and over. It's a trial court. It's not a court of appeals. It's not a court that makes law. As a trial court, it could always revisit that issue. But it... No. It's not precedential. They're not bound by it. The trial court can revisit Allen and say, you know what, you're right. Isn't that right? Yes, Your Honor, and I believe that they did. Or at least it could have preserved the point for appeal. Well, they did in the opinion, right? When you look at the opinion, the court says we're not going to revisit our holding in Allen, and then they endorse the dissent in BASR. So the court itself recognized that Allen was an issue because they dealt with it in both their opinion and they dealt with it in the motion to reconsider. But an issue is an issue, though, that had been waived. Well, no, that's it. We argued on our brief that you cannot waive the proper application of the law. The issue... But I have to disagree. I mean, it seems to me the only time you brought the issue up was in a motion for reconsideration after the commissioner had highlighted BASR in their own post-trial brief. So how that argument isn't waived, I can't see. First, to be clear, I didn't fight the case. One more thing. If we agree with you, our holding is going to apply to district courts in this circuit. Yes, Your Honor. District courts in a circuit where the issue is not preserved, in other words, waived, basically, and we decided on appeal, and I'm concerned about the administration of justice in the circuit, not just the tax court, but the district courts. So then we look at your discretion and why we should take it. First, it is a pure issue of law, right? We cite in our brief the Dean Witter case on why it should be reversed. Two, it's an issue of law. More important, it is an issue of paramount public importance. The state of the law right now is that BASR is the law in the Court of Federal Claims, which is a refund jurisdiction. So any wealthy taxpayer who has an unscrupulous return prepare can pay the tax and just win. 72% of the taxpayers go to the tax court unrepresented. This is important. But no tax court decision is appealable to the Federal Circuit. That's why it is important to cheat. No, that's why it's completely unpersuasive, right? 72% of taxpayers go to the tax court, which means of that number, a huge amount go to all the other And the law you're calling us to make deals with, on the basis of a circuit that doesn't even hear those things, binding rulings for district judges that hear the cases where the taxpayer pays tax and tax court cases where the taxpayer doesn't. No, what we're asking you to do is say that it is persuasive and it is sufficient for you to reverse the reason the tax court— Tax court is a trial court of national jurisdiction. Minister, let me tell you how serious your argument is in terms of the administration of justice. Yes. If you'd raised Alan at the beginning, and if the court had said, well, we'll reserve ruling, then the focus is on whether the taxpayers were guilty of fraud. Correct. It puts the commissioner on notice, you better focus on the taxpayers. When you say Alan applies, they don't focus on anything about the taxpayers. There could be nothing, in my view, more fundamentally unfair than to invite a district judge or a tax court judge to take a position which, in effect, eliminates a whole aspect of the case. And unfair to the opposing party. Well, if I could focus you again on the parties stipulated that the issue for trial was whether there's an exception to the three-year statute applied. Both sides left the what exception and how to argue it open, right? So, again, the difference in a tax court trial, there are more stipulations of fact. The last stipulation in the stipulation of fact— No, that was just a standard stipulation. In fact, they framed the issue for the court as to whether or not the three-year statute of limitation had applied. So it would be the government—the petitioner tried the case trying to show that there was no fraud on the return at all by anyone. Then the tax—the commissioner basically said, we win. We've got the criminal conviction of someone who isn't a party to this case that we didn't even bring to the courtroom saying that my habit was to file fraudulent returns, right? Again, when we talk about evidentiary issues, that's impossible to cross-examine for two reasons. One, that the taxpayer accountant wasn't in the courtroom. Two, even if you wanted to cross-examine and demonstrate that that wasn't in habit, the privacy rules of tax returns meant that you could never try the case by demonstrating that it wasn't his habit or that the taxpayer—not taxpayer—the return preparer was just currying favor with the prosecution. You look at the evidence of the preparer fraud in the cases. It was his criminal conviction, and his boilerplate affidavit saying essentially everything I did was fraudulent. It should have never come in, but the reason it came in was the pure application of the wrong legal principle to the case that the preparer's fraud was legally relevant to whether or not the exception to 6501's three-year statute of limitations, the exception of the taxpayer's right to finality in Section 7803, should be applied. So we would argue that the taxpayer's rep—and again, I was not taxpayer's rep at trial. I'm the pro bono counsel on appeal. The taxpayer's rep could not waive a basic fundamental right on the taxpayer's bill of rights, the right to finality as embodied in 6501C3—I mean C—that we normally have a three-year statute of limitations. And then again, how do we know that it's an error of law? I mean, we look at the plain language. We look at the general rule. Three-year statute of limitations applies to a tax and a tax return. You look to the rest of 6501. What are the extensions? Taxpayer misconduct. A taxpayer doesn't file a return. There can be an extension of time. A taxpayer signs an agreement with the government to be an extension of time. So Allen is really an unprecedented—putting someone else into the private relationship— The Second Circuit applied that one. —only because they conceded in CitiField. We've given you the language in the brief. They still applied it because the taxpayer conceded it. And that, again, was the problem in CitiField. The taxpayer was in—his argument was not to fight Allen because it was the law in the tax court at the time. But he did try to argue that there was no fraud on these returns, that the government had not met its burden of proof to establish fraud on these returns. And but for the holding of Allen and the application of Allen, the evidentiary rulings would not have been made. So, again, I know that we focused our time on the waiver issue. But the waiver issue, one, we would say that we look at—he could not have waived the proper application of the law. And the court did, in fact, realize that the Allen issue was in play in both the opinion that it wrote saying that we like BSR's dissent. We think that that's the better application of the law. So they did consider it. They weren't reversing the tax court's ruling in Allen. But that doesn't stop the court from now looking at it again. I think we have your point. Very good. Thank you, Your Honor. Mr. Weiner. Good morning, and may it please the Court. Excuse me. Andy Weiner for the Commissioner of Internal Revenue. Having just listened to the previous colloquy, I think the Court well understands our point with respect to waiver. The one point that I would just add to that is that because it had come up and became an issue of dispute was that I wanted to call the Court's attention to paragraph 59 of the Stipulation of Facts, which says that the only issue in dispute is whether petitioners' individual income tax returns at issue were false and fraudulent. If the answer is negative, then the statute of limitations precludes the deficiencies from being assessed. If the answer is affirmative, then the asserted deficiencies and accuracy-related penalties will not be challenged by petitioners. There is no bringing that fraud and the intent to evade tax back to the taxpayer in that stipulation. And so I respectfully disagree with Mr. Agostino.  Even if it might have been as a result of the stipulation, the Court got into the dialogue with counsel anyway and eliminated it. The counsel conceded on the record. Correct. So while we do believe that the issue is waived, we don't think – I would like not to – My concern is if it wasn't waived, then the commissioner could have put on all kinds of evidence, I suppose, of different stipulations about the taxpayer's own conduct. The entire case might have proceeded on a different arc. Nobody, including myself, knows how that would have proceeded. Well, you'd have to speculate. Right. But I would say that because – The service would have certainly – the commissioner certainly would have had the opportunity to do that and would have understood that might be a good idea. Right. At the same time, though, the commissioner also is firmly of the belief that Allen is the correct law. This is not a – But you don't want us to decide that. Well, I don't think it's properly before the court. However, as we mentioned in our brief, it is actually an issue of this court's discretion. Well, this statute was enacted in 1918 when the code was enacted. Well, that actually predates the code. And my understanding, in 1934 there was a congressional bill introduced which would have changed it, but it was rejected. Am I right? That is correct. That is correct. And that's sort of the – That would have fit your colleague's understanding of what the law is. Right. The basic point is that in 1918 when the fraud exception was enacted, it was never tied to the taxpayer. And then in 1934 there was language that would have clarified that, but that was rejected. And on top of that, there are numerous and compelling reasons why, including the plain language of the statute. Well, it would have changed the whole approach the commissioner would take to investigating tax returns. Correct. But I would say this, is that the fraud exception, the commissioner needs it the way it is interpreted in Allen, and it has always been interpreted. There are reasons that Badaracco and the Supreme Court went into. The government is at a unique disadvantage when trying to determine what the proper tax liability is in a fraudulent return. There is the issue of the fact that civil proceedings are basically stayed pending criminal proceedings. There is the fact that the government, which is something of a rarity, has the burden of proof by clear and compelling evidence that the return is, in fact, fraudulent. These are all reasons why the three-year limitations period is an unreasonable amount of time for the government to investigate in order to make its assessments. And so Congress, in its wisdom in 1918 and throughout the history, in not changing the substance of the language, has recognized that and has provided that in the instance of fraud with the intent to evade tax, then the limitations period is open indefinitely. As well, I would like to follow up on your point, Judge Choflat, about citywide. In citywide, the court did address the issue. In fact, in plain language, the court said, we conclude that the limitations period is extended if the taxes were understated due to fraud of the preparer. Plain language in the opinion. As well, I would note that unlike this case, the case in citywide, the government was the appellant. The government was appealing because the tax court did not apply the fraud exception and the government appealed and said the fraud exception should have been applied. So the government had put that issue squarely before the tax court and then appealed and said, look, you need to apply the fraud exception appropriately in that case. Now, while the tax court conceded the legal issue on appeal, that legal issue was already squarely before the court based on what the government's issue on appeal was. And so that was a case in which the issue, in fact, was before the court and the taxpayer in that case decided that they would focus their arguments as to factual questions as opposed to legal ones. A few other points that I'd just like to make, Your Honors, is the statute of limitations, there's a dispute between the parties in the briefs as to what the proper rule of construction is as to whether they should be strictly construed in the government's favor or the taxpayer's favor. The Boterocco states in plain language that it should be construed strictly in favor of the government. And the response by Mr. Agostino is that, yeah, but that was a fraud case and so therefore, oh, we only do that in the instance of fraud. That's incorrect. There's other Supreme Court cases. There's Buford, Ogilvie. There's the case law of this circuit, Roussea, in the old Fifth Circuit. And in this case, the 1992 case, Felhaber 954 F2D 653, is a case in which this court recognized that when you're talking about the statute of limitations on assessments, where the government is voluntarily foreclosing its rights to seek payment and to make sure that taxpayers pay their fair share, then that waiver of the government's rights to collect taxes has to be strictly construed in the government's favor because the government doesn't have to give it in the first place. Finally, I guess my last point on this is I'd just like to point out the remedial purpose of the fraud exception. On the end of the day, for reasons I had already discussed, the government needs the ability to investigate for more than three years in the instance of a fraudulent return. I would point out that the taxpayer in the end of the day is no worse off. I'm confused. You think this argument is waived. Yes. But now you're saying these things. Why? Because you want us to look into it? Well, Your Honor, the government finds itself in something of an unusual position here because while we do think it is waived, the— But what do you think about the effect it would have on the district courts of this circuit if we had obtained it? I respectfully and strongly disagree with the fact. No, no. What effect would—  We couldn't take one position with regard to the tax court on waiver and another one in the district court, could we? Hardly. No. In fact— We treat you as an ugly duckling down there or something. Yeah. The tax court rules look to the rules of federal civil procedure in terms of applying its own internal rules. And so unless there are any questions— We understand the waiver point. All right. Thank you, Mr. Augusto. Augustino. On the harm to the government— Did we have a special rule for the tax court? No. I'm not advocating for a special rule— On waiver. —for the tax court. I'm arguing—I mean the two things that we put in the brief is, one, this was such—this issue of loss was so integral to a fair trial and to all of the evidentiary findings in this case. You send back the government. You send back the commissioner. You lead the commissioner to believe that the only issue was whether the preparer was guilty of fraud and the taxpayers' conduct is irrelevant. You sucker him in that position. And then all of a sudden— They didn't prove that the taxpayers were guilty of fraud. How do we write an opinion for us that can fit the district courts in this circuit under those kinds of circumstances? The government didn't try their case that way. They put—let's look at who the government's witnesses are. Your argument is the government should have anticipated that you had preserved the point, and the government waived its opportunity to put on evidence that the taxpayers were guilty of fraud. That's your argument. It's not that they waived the opportunity. They tried— No, no, no. If you preserved the point, if you preserved the point which meant that we would decide it, then in effect the government had an opportunity and should have put on evidence of the taxpayer fraud or they lose if we agree with you. They put on evidence of the taxpayer fraud. The tax court disagreed but still found that Allen carried the day. They put the two taxpayers on. They put the criminal investigators on. Who they didn't call was the bad actors that they're asking the court and this court to rely on to find that the returns are fraud—had false or fraudulent. Right? They put both taxpayers on, the husband and the wife. They were all subject to cross-examination. The tax court, had they found that the taxpayers were the proximate cause of the false or fraudulent return, we wouldn't be here. The only reason they were here is because the court found that, hey, the government didn't meet its burden of proof with respect to the taxpayers and the return of the taxpayers, that the fraud was by the return preparers who never testified and who never brought the specificity— That's your fallback position. Well, our fallback position is we didn't get a fair trial. Our fallback position is that the government didn't prove that Howell committed fraud. On these tax returns. On these returns. Yes. I mean, the other position is that the evidence that came in, the habit evidence through hearsay testimony, conclusory affidavits, was not sufficient to prove fraud. And you can reverse just on that ground. What the affidavit of Howell is, I committed fraud. I plead guilty. The red light just went on. Thank you very much. You have your pick. Thank you. Thank you, gentlemen. We'll go to Carbone versus CNN. Thank you. Thank you.